# FEDERAL LAWSUIT COMPLAINT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROY JACKSON,
Plaintiff,
v.
SAYBROOK UNIVERSITY,
Defendant.

**Case No.:** ________________
**Hon.:** ________________

Case: 2:26−cv−11200
Assigned To : Berg, Terrence G.
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 4/13/2026
Description: CMP ROY JACKSON V SAYBROOK UNIVERSITY (SS)

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1. This is a civil rights action brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA) Title II, 42 U.S.C. § 12131 et seq., to redress the unlawful discrimination and retaliation committed against Plaintiff, a qualified individual with a disability, by Defendant Saybrook University.
2. The Defendant, a recipient of federal financial assistance, discriminated against the Plaintiff by denying him a reasonable accommodation for his documented disability, failing to engage in an interactive process, and retaliating against him for advocating for his rights and the integrity of his academic program.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). Plaintiff's claims arise under the laws of the United States, specifically Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.
4. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the

claim occurred in this district, including Plaintiff's residence and the aggravation of his medical condition by the Defendant's actions.

## PARTIES

5. **Plaintiff** Roy Jackson is an individual with a disability as defined by the ADA and Section 504. He is a former doctoral candidate in the Ph.D. Integrative Social Work program at Saybrook University. He resides in Paw Paw, Michigan. His treating physician is Dr. Sagar V. Parikh, a tenured professor at the University of Michigan (**Exhibit A**). Plaintiff had a strong academic record with a cumulative GPA of 3.50 (**Exhibit EE**).
6. **Defendant** Saybrook University is a private university operating in Pasadena, California. At all times relevant to this complaint, Saybrook University was a recipient of federal financial assistance and was therefore subject to the requirements of Section 504 of the Rehabilitation Act.

## STATEMENT OF FACTS

### A. The University Knew of Plaintiff's Disability but Provided Vague, Inadequate Supportive Measures

7. On December 4, 2025, the university granted Plaintiff temporary accommodations, including 72-hour assignment extensions and 48-hour discussion post extensions (**Exhibit B**).
8. These were later extended through February 13, 2026, with what the university described as increased accommodations: "6-day assignment extensions and 72-hour discussion post extensions" (**Exhibit C**). However, the university never clearly explained what "6-day extensions" actually meant, leaving Plaintiff without meaningful guidance.
9. Throughout January 2026, Plaintiff repeatedly informed the university that he was struggling to keep up with coursework despite these measures. He explicitly stated: "I am not well and am suffering daily" and "a pause is currently in place because that is all I am reasonably capable of managing at this time" while awaiting guidance from his psychiatrist (**Exhibit D**).
10. On January 21, 2026, Plaintiff informed Student Affairs that the existing measures were insufficient and that he would need significantly more extended time or a temporary removal of firm deadlines. The university acknowledged his medical pause but did not provide adequate relief or clear guidance (**Exhibit D**).

11. On January 26, 2026, Dr. McGill confirmed receipt of Plaintiff's messages but did not provide additional accommodations beyond extending the existing vague measures (**Exhibit D**).

## B. The University Refused to Engage with Plaintiff's Treating Physician

12. Despite Plaintiff's submission of both a FERPA release and a specific Release of Information (ROI) designating Dr. Parikh as his authorized representative (**Exhibit E**), the university refused to meaningfully engage with him.
13. On February 26, 2026, the Registrar informed Dr. Parikh that a FERPA release "does not give that individual the authority to act on the student's behalf" and is "limited to disclosure only" (**Exhibit F**). The university thus prevented Plaintiff's physician from advocating for the medical accommodation he had prescribed.

## C. Formal Accommodation Request and Denial

14. On February 13, 2026, Dr. Parikh formally requested Incomplete grades for Plaintiff's Spring 2026 courses and explicitly asked the university to waive its standard 75% coursework completion rule. He stated Plaintiff could resume full work by March 1, 2026, and complete all work by May 25, 2026 (**Exhibit G**).
15. On February 16, 2026, Plaintiff's Department Chair, Dr. Annette Anderson-Engler, denied the request for an Incomplete. Her sole stated reason was that Plaintiff had not completed 75% of the coursework. She gave no consideration to Dr. Parikh's request for a waiver, the ADA, or Plaintiff's documented medical condition (**Exhibit H**). This constitutes a direct failure to provide a reasonable accommodation.

## D. Retaliation for Protected Activity

16. On October 23, 2025, after Plaintiff raised good-faith concerns about program integrity, Dr. Anderson-Engler issued him a retaliatory Level II Written Warning (**Exhibit I**) and an Academic Remediation Plan (**Exhibit J**).
17. On the same day, she privately praised Plaintiff's "ethical integrity," called him a "kind and caring social worker," and assured him there would be "NO reprisal" (**Exhibit K**), proving the warning was pretextual and retaliatory.
18. On February 8, 2026, Dr. Parikh explicitly linked the university's actions to the worsening of Plaintiff's medical condition, stating his health was "severely compromised in the past month by stress and complications arising from University actions" (**Exhibit L**).

## E. Procedural Manipulation to Avoid Independent Review

19. When Plaintiff filed a formal complaint, the Vice Provost, Dr. Shaniece McGill, unilaterally channeled it into the Anti-Discrimination, Anti-Harassment, and Anti-Retaliation (DHR) Policy (**Exhibit M**). Unlike the Student Grievance Policy, the DHR policy has no independent committee, no 30-day timeline, and no required hearing.
20. When Plaintiff requested that his complaint be reviewed under both policies or that he be allowed a dual-track review, Dr. McGill refused. She stated: "During the review process, I make the decision on which policy to review the complaint under and this decision is final" and "There is no appeal process for disagreement on determining which policy the matter should be reviewed under" (**Exhibit M**).
21. On February 12, 2026, after more than three months, Dr. McGill issued an Initial Assessment Outcome finding "no violation" (**Exhibit N**).
22. The university's own Academic Catalog grants the Policy Exception Committee authority to waive institutional policies for extenuating circumstances, including documented medical issues (**Exhibit O**). Despite this, the Committee refused to waive the 75% rule for Plaintiff's documented disability.

**F. Petition Process Failures**

23. Plaintiff submitted a Petition for Policy Exception. On February 20, 2026, the Committee denied his petition, falsely stating he had "stopped coursework before [my] medical documentation was provided" (**Exhibit P**). This is factually incorrect: Dr. Parikh's documentation was submitted on February 13, 2026 – before the denial – and the university had acknowledged Plaintiff's medical pause as early as January 2026 (**Exhibit D**).
24. Plaintiff filed a formal appeal with Provost Robyn Parker (**Exhibit Q**). On February 23, 2026, Provost Parker denied the appeal in a one-page letter, stating none of Plaintiff's materials would alter the determination (**Exhibit R**).
25. On March 17, 2026, Plaintiff submitted a second petition before the Tuesday deadline. University policy requires a decision by end of business Friday. On March 19 and March 20, Plaintiff repeatedly requested: (1) the names of the committee members reviewing his case, and (2) confirmation that no individuals involved in his case were serving on the committee. The university never provided this information. As of the end of business on March 20, 2026, the university issued no decision on Plaintiff's second petition, in violation of its own policy (**Exhibit S**).

**G. Medical and Family Support**

26. On February 26, 2026, Dr. Parikh formally recommended a medical withdrawal and stated that, consistent with his experience at other universities, a medical withdrawal has "typically resulted in a tuition refund" (**Exhibit T**).
27. Plaintiff's parents wrote to University President Dr. Jeremy Moreland on February 6, 2026, advocating for Plaintiff's medical needs and requesting institutional support. The President responded but no meaningful accommodation was provided (**Exhibit U**).
28. Plaintiff submitted a formal FERPA records request to preserve his rights (**Exhibit AA**). He received letters of support from a peer (**Exhibit BB**) and a faculty member (**Exhibit CC**). His master narrative of the entire case is attached (**Exhibit Z**).
29. The university confirmed Plaintiff's withdrawal was processed with an effective date of February 26, 2026 (**Exhibit X**). Plaintiff's billing summary shows total charges of $90,583 and payments of $82,380, with Spring 2026 charges of $15,565 (**Exhibit DD**).

### H. Resulting Financial Harm

30. Plaintiff was constructively forced to withdraw from the Spring 2026 semester. He incurred **$15,565.00** in institutional charges for which he received no educational benefit. His unofficial transcript shows all Spring 2026 courses graded as "W" (Withdrawal), meaning he received no academic credit (**Exhibit EE**).
31. On March 16, 2026, the university returned **$8,203.00** of Plaintiff's federal loan funds to the Department of Education (**Exhibit V**).
32. The official Return of Title IV calculation worksheet confirms a total of **$17,179.15** in unearned Title IV aid, with the school required to return **$8,202.76** (**Exhibit W**).
33. Critically, Plaintiff remains personally responsible for repaying **$24,395.25** in federal loans (**Exhibit W**, Box R) despite receiving no academic credit for the Spring 2026 semester.
34. Plaintiff's total financial harm is **$39,960.25**, which represents $15,565.00 in lost tuition payments plus $24,395.25 in remaining federal loan liability for which he received no educational benefit whatsoever.

## CLAIMS FOR RELIEF

### COUNT I: Violation of Section 504 of the Rehabilitation Act – Discrimination (29 U.S.C. § 794)

35. Plaintiff repeats and realleges paragraphs 1 through 34 as if fully set forth herein.

36. Plaintiff is a qualified individual with a disability.
37. Defendant is a recipient of federal financial assistance.
38. Defendant denied Plaintiff a reasonable accommodation for his disability, failed to engage in an interactive process, and subjected him to discrimination that effectively barred him from completing his education.
39. Defendant's actions constitute discrimination in violation of Section 504 of the Rehabilitation Act.

**COUNT II: Violation of Section 504 of the Rehabilitation Act – Retaliation (29 U.S.C. § 794)**

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.
41. Plaintiff engaged in protected activity by requesting a reasonable accommodation and by raising good-faith concerns about program integrity.
42. Defendant took adverse actions against Plaintiff, including issuing a retaliatory Level II Written Warning, denying his accommodation request, and channeling his grievance into a procedurally flawed process.
43. A causal connection exists between the protected activity and the adverse actions.
44. Defendant's actions constitute unlawful retaliation in violation of Section 504 of the Rehabilitation Act.

**COUNT III: Violation of the Americans with Disabilities Act, Title II (42 U.S.C. § 12131 et seq.)**

45. Plaintiff repeats and realleges paragraphs 1 through 44 as if fully set forth herein.
46. Defendant is a public entity or a private entity operating as a place of public education and is subject to Title II of the ADA.
47. Defendant discriminated against Plaintiff by denying him reasonable accommodations and retaliating against him for exercising his rights under the ADA.
48. Defendant's actions constitute discrimination and retaliation in violation of the Americans with Disabilities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor and against Defendant, providing the following relief:

**A.** An order declaring that Defendant violated Section 504 of the Rehabilitation Act and the Americans with Disabilities Act;

**B.** An order requiring Defendant to grant Plaintiff a retroactive medical withdrawal for Spring 2026 with a full tuition refund of **$15,565.00**;

**C.** An order requiring Defendant to coordinate with the U.S. Department of Education to reverse the $8,203.00 loan return or otherwise restore Plaintiff's financial aid status;

**D.** Compensatory damages in the amount of **$39,960.25** for Plaintiff's total financial harm (lost tuition plus remaining loan liability);

**E.** Compensatory damages for Plaintiff's severe emotional distress and medically documented physical harm;

**F.** Punitive damages against Defendant for its willful disregard of Plaintiff's civil rights;

**G.** An order requiring Defendant to rescind the retaliatory Level II Warning and Remediation Plan from Plaintiff's record;

**H.** An order requiring Defendant to provide mandatory training on Section 504 and the ADA's interactive process for all relevant faculty and staff;

**I.** An order requiring Defendant to adopt transparent procedures for petition committee membership disclosure and timely decision-making;

**J.** Pre-judgment and post-judgment interest as provided by law;

**K.** Reasonable attorneys' fees and costs as permitted under 29 U.S.C. § 794a(b) and 42 U.S.C. § 12205; and

**L.** Any other relief this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated:** April 13, 2026

**Respectfully submitted,**

/s/ Roy Jackson
Roy Jackson, Pro Se

43106 38th Ave
Paw Paw, MI 49079
(269) 532-8173
roy.jackson5473@gmail.com